### In re EDWARDS.

(District Court, N. D. Georgia. July 18, 1914.)

BANKRUPTCY (§ 166*)—VOIDABLE PREFERENCE—BELIEF OF CREDITOR.

　　A wholesale house, having received notice from a mercantile agency of the filing of a number of mortgages against the property of a customer, sent an agent, who at once, and without examining the records, or making any inquiries, except of the customer, took a mortgage on the latter's stock of goods to secure a pre-existing indebtedness. The debtor was in-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

solvent, and became a bankrupt a few days afterward, and the mortgage, if enforced, would have effected a preference. *Held*, that the creditor had reasonable cause to believe that such preference would result, and that the mortgage was voidable under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), as amended by Act June 25, 1910, c. 412, § 11, 36 Stat. 842 (U. S. Comp. St. Supp. 1911, p. 1506).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. § 166.*]

In Bankruptcy. In the matter of J. L. Edwards, bankrupt. On review of order of referee disallowing claim of the Dannenberg Company as a secured claim. Affirmed.

Hardeman, Jones, Park & Johnston, of Macon, Ga., for claimant.

M. J. Yeomans and Jas. G. Parks, both of Dawson, Ga., and I. J. Hofmayer, of Albany, Ga., for trustee.

NEWMAN, District Judge. The finding of the referee in this case is as follows:

"I, W. W. Wright, one of the referees of said court in bankruptcy, do hereby certify that in the course of the above proceedings before me the following questions arose pertinent to said proceedings

"Question. Whether or not the claim of Dannenberg Company against J. L. Edwards, bankrupt, should be allowed as a secured claim over the objection of A. J. Hill, trustee for said bankrupt, on the following grounds, to wit:

"(1) Because, the mortgage securing the said claim was given for the purpose of hindering, delaying or defrauding creditors. Section 67 (e) of the Bankruptcy Act.

"(2) Because, said mortgage was a voidable preference under section 60 (a) and (b) of the Bankruptcy Act.

"After notice to all parties at interest, a hearing was had on said matter before me at Dawson, Ga., on March 12, 1914, and on March 23, 1914, I entered an order disallowing said claim as a preferred lien, on the ground that the same was a voidable preference under section 60 (a) and (b) of the Bankruptcy Act.

"At said hearing Dannenberg Company introduced in evidence the following documentary evidence: A note signed by J. L. Edwards for $1,082.24 principal, dated October 7, 1913, and due one day after date. Also a certain mortgage, dated October 7, 1913, given by J. L. Edwards to the Dannenberg Company to secure said note and future credits and advances which might be extended by the said Dannenberg Company during one year after this date, not to exceed $2,500, upon the following property: All of that certain stock of dry goods, notions, clothing, shoes, hats, caps, groceries, cigars and tobacco, tinware and hardware and all fixtures and all other goods of every kind and description now contained in the one-story brick storehouse situated on Main street in the city of Dawson, said county, which mortgage was duly recorded in the clerk's office of the superior court of Tarrell county on October 9, 1913. Also the answer of the trustee to the application of J. A. Shields to sell certain lands belonging to the bankrupt in order to fix the amount of his claim.

"The trustee introduced the following documentary evidence: Mortgage to the Bank of Dawson, given by J. L. Edwards on his stock of goods and fixtures for $3,200, dated January 3, 1913, recorded October 3, 1913. Also mortgage to the Bank of Dawson, given by J. L. Edwards on his stock of goods and fixtures and the crop, for $9,082, dated October 3, 1913, and recorded October 3, 1913. Also mortgage to the Swift Fertilizer Works, given by J. L. Edwards on the entire crop of cotton, corn, and other crops, dated May 23, 1913, and recorded October 2, 1913, for $———; also mortgage to Lowery Bros., given by J. L. Edwards on the entire crop of cotton and corn, dated August 1, 1913, and recorded the same month, for $126.90. Also mortgage to

Gardner & McDowell, given by J. L. Edwards, covering 24 head of mules, dated January 3, 1912, and recorded January 12, 1913, for $5,113.20, with interest from October 1, 1912.  Also claim of Brown Guano Company, for $1,067.04, evidenced by a note dated January 22, 1913, due October 1, 1913. Also that part of the original petition in bankruptcy, showing the entry of filing on October 11, 1913, and the certificate of reference from the clerk on October 28, 1913.  Also the order of adjudication.  Also the schedule in bankruptcy, showing the indebtedness owing to the secured and unsecured creditors, as well as all the assets of the bankrupt.  Also the intervention of L. J. Boswell for a rescission of the real estate.  Also the appointment of trustee.  Also the appraisement of the stock of goods of the bankrupt.  Also one report of sale of said stock and the order of consummation of the referee.

### "Findings of Fact.

"The application of J. A. Shields and the intervention of L. J. Boswell are set out in the petition for review, and reference thereto is prayed.  The other documentary evidence is attached to this certificate.

"I find that on the 11th day of October, 1913, an involuntary petition in bankruptcy was filed against J. L. Edwards, which was, on the 28th day of October, 1913, referred to me as referee, which order of reference recited that Edwards had filed an answer to the petition of creditors, admitting insolvency. Whereupon he was, upon the 18th day of November, 1913, adjudged bankrupt.

"That on or about the 6th day of October, 1913, notice was brought to the Dannenberg Company, a creditor of the bankrupt, through a mercantile agency, that on the 2d and 3d several mortgages, aggregating about $15,-000, had been filed for record, and that immediately upon receipt of this knowledge the credit man of the Dannenberg Company came to Dawson to make an investigation, and that on October 7, 1913, the said Edwards being at that time insolvent, he executed and delivered to the Dannenberg Company his note and mortgage on the stock of goods, fixtures, etc., for the sum of $1,082.24, due one day after date, to secure a pre-existing, past-due indebtedness, which, upon request, had already been extended at least once. The agent of the Dannenberg Company made no investigation of the affairs of J. L. Edwards, other than questioning him, and did not investigate the court records.

"I further find that the effect of the execution of said mortgage was to give the Dannenberg Company a greater per cent. of its debt than would be received by other creditors of its class, and that the agent of the Dannenberg Company was put upon notice of sufficient facts to give him reasonable cause to believe that a preference was intended.

### "Findings of Law.

"In order to set aside a mortgage as a voidable preference under section 60 (a) and (b) of the Bankruptcy Act, it is necessary for a trustee to show that the bankrupt, (1) while insolvent, (2) within four months of the bankruptcy, (3) made the transfer in question, (4) that the creditor receiving the transfer will be thereby enabled to obtain a greater per cent. of his debt than other creditors of the same class, and (5) that the creditor receiving the transfer had reasonable cause to believe that it was thereby intended to give a preference.  Kimmerle v. Farr, 26 Am. Bankr. Rep. 818, 189 Fed. 295, 111 C. C. A. 27.

"The evidence satisfies me that at the time the mortgage was given Edwards was insolvent.  The stock of goods, according to the appraisment, inventoried $10,146, and was appraised at 75 per cent. of inventory value, or $7,609.50, and when sold by the trustee brought $7,400.  The evidence showed that this stock of goods was covered by mortgages far in excess of its value. The evidence also showed that the bankrupt had traded his Terrell county land to one Boswell for Fulton county property, and that owing to the undisclosed liens on both properties the trade has been rescinded, and it therefore follows that the bankrupt's assets in land should be figured on the basis of the value of the Terrell county property; and the evidence showed, further, that the Terrell county land, which Edwards received back in the Boswell rescission, is covered by liens to such an extent that the unsecured cred-

itors will receive nothing therefrom. There were also mortgags on the bank-rupt's entire crop. No evidence was introduced showing that the unsecured creditors would derive anything, except from the proceeds of the bankrupt's stock of goods. I have therefore concluded that Edwards was insolvent on October 7, 1913. It is undisputed that the mortgage was made within four months of the bankruptcy, and that, if not set aside, its effect will be to give the Dannenberg Company a greater percentage of its debt than other creditors of the same class.

"The remaining element to be considered, therefore, is whether the Dannenberg Company, through its agent, had reasonable cause to believe that a preference was intended by the execution of the mortgage. The evidence shows that, immediately upon receiving knowledge that mortgages were being recorded against Edwards, the Dannenberg Company sent their credit man to make an investigation, but that, in spite of the knowledge that mortgages aggregating more than the value of the stock of goods belonging to the bankrupt had been filed for record, this agent made no investigation of the court records as to the other assets or liabilities, if any, of the bankrupt, and made no further investigation except to question the bankrupt himself.

"In the case of Ogden v. Reddish (D. C.) 29 Am. Bankr. Rep. 531, 200 Fed. 977, the court held that the person receiving transfer has reasonable cause to believe that it will effect a preference if the degree of knowledge is such as to engender fear that such is the case, so strong that the preferred creditor refrains from availing himself of the means at hand for ascertaining the truth, in order to keep himself in the dark in regard thereto, and to be in a position to claim that he did not have reasonable cause to believe that the transfer to him would work a preference.

"In Rogers v. American Hobert Co., 31 Am. Bankr. Rep. 576, 103 Fed. 680, the court held that since the amendment of 1910 to section 60 (b) of the act, it was not necessary to show the intention of the bankrupt to prefer a creditor, but he must still show that the creditor had reasonable cause to believe that the debtor was insolvent, and that the transfer would result in diminishing the bankrupt's assets applicable to the payment of creditors of the same class.

"In Tilt v. Citizens' Trust Co. (D. C.) 27 Am. Bankr. Rep. 320, 191 Fed. 441, it was held that notice of facts which would incite a man of ordinary prudence to an inquiry under similar circumstances is notice of all of the facts which a reasonably diligent inquiry would disclose.

"See, also, Stearn v. Paper et al (D. C.) 25 Am. Bankr. Rep. 451, 183 Fed. 228, holding that facts which would put an intelligent business man upon inquiry constituted reasonable cause to believe, if intent to prefer would be discovered by following up the inquiry, and also that fear or suspicion of a preference constituted reasonable cause to believe, if they would incite an intelligent business man to an inquiry, which would disclose a preferential intent.

"In the Stearn Case, supra, the court, on page 458, enters into a very interesting discussion of what is necessary to constitute a reasonable cause to believe, comparing the line of authorities holding that fear and suspicion do not constitute reasonable cause to believe, and the authorities holding that actual knowledge or actual belief of an intent to prefer are not required, and says that the doctrine of fear or suspicion of a preference is not sufficient to invalidate the transfer must receive a restricted application under the present bankruptcy law. The agent of the Dannenberg Company could have found out, not only the facts appearing on the record, but also that Edwards was at that time being pressed by his various creditors. And these facts, taken in connection with the recording of the large amount of mortgages, which showed on their faces that they had been withheld from record for a considerable time, and the other circumstances, in my opinion brought the Dannenberg Company within the meaning of authority cited, supra, on the doctrine of inquiry.

"Upon the foregoing facts and authorities I entered the order which is hereto attached, disallowing the claim of the Dannenberg Company as a secured claim. And the said question is certified to the judge for his opinion thereon.

"I return herewith the documentary evidence hereinbefore mentioned, the claim of the Dannenberg Company, the transcript of the evidence adduced upon said hearing, and the order which is the subject of this review."

This matter is before the court for review, and the question is, as shown by the discussion and findings of the referee, whether the mortgage was a voidable preference under the Bankruptcy Act of 1898.

Counsel for the Dannenberg Company state that under the evidence and the findings of the referee, as a matter of fact, they must agree that Edwards was insolvent at the time he made the Dannenberg mortgage. This being true, and the mortgage having undoubtedly been made for a pre-existing debt and within four months of the filing of the petition in bankruptcy, the simple question is whether the mortgagee had "reasonable cause to believe that the enforcement of such * * * transfer would effect a preference."

It would be a reflection on the intelligence of Mr. Walker, who represented the Dannenberg Company in this matter, and who took the mortgage for them, to say that he did not know that the effect of this transfer would be to give a preference to the Dannenberg Company, or at least to say that he could not have anticipated it, the facts being as they are conceded to have been. There can be no question that the facts before Mr. Walker were such as to put him on inquiry, and that this inquiry would have developed what is now conceded to be true, that Edwards at the time was insolvent, and, of course, if insolvent, a mortgage would give the Dannenberg Company a greater percentage of its debt than other creditors of the same class.

Learned counsel for the Dannenberg Company says in his brief:

"Unless there was substantial evidence of reasonable ground for belief on Walker's part that the enforcement of Dannenberg's mortgage would effect a preference, the referee's finding cannot be sustained. Reasonable grounds for such belief cannot be found in the evidence in this case. The burden being on the trustee, and such evidence not having been introduced by him, he cannot, because he disbelieves the witnesses, assume as proven the things which they refused to testify to as facts."

I understand the finding of the referee to be based on the facts conceded by Walker and by Edwards, the bankrupt, to be true. Walker states that he had received what is called a "red slip" from a commercial agency, which puts them on inquiry as to the condition of the person as to whom the "red slip" is issued. When Walker received this slip, he was not very far from Dawson, and went there immediately and obtained the mortgage. He concedes that after he obtained the mortgage and before he filed it for record he had information that Edwards would be put into bankruptcy, and says he did not intend, before he received this information, to have it recorded.

Tested either at the time of the giving of the mortgage or at the time it was recorded, I think it perfectly clear that Walker, acting for the Dannenberg Company, had reasonable cause to believe that the enforcement of the mortgage would effect a preference in favor of his firm.

The action of the referee must be approved and confirmed.